IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY JONES, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-6004 |
| | : | |
| v. | : | |
| | : | |
| VICTORIA GESSNER, M.D., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                    October 29, 2021

A prison official's deliberate indifference to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. In this case, the prisoner plaintiff brought an action for an Eighth Amendment violation under 42 U.S.C. § 1983, alleging the defendant doctor, who is employed as a county prison's medical director, acted with deliberate indifference when she discontinued the plaintiff's use of a walker. The defendant has moved for summary judgment, asserting that the plaintiff has not demonstrated that she was deliberately indifferent to a serious medical condition when she discontinued his use of a walker.

As explained in more detail below, the record, viewed in the light most favorable to the plaintiff, shows no medical expert concluded he still required use of a walker, and though he disputes the decision to discontinue the walker, the decision passes constitutional muster. There being no genuine dispute of material fact necessitating a jury trial, the court will grant the defendant's motion for summary judgment.

**I.     PROCEDURAL HISTORY**

The plaintiff, Corey Jones ("Jones"), initiated this action by filing a complaint against the defendant, Dr. Victoria Gessner, on November 30, 2020. Doc. No. 1. In the complaint, Jones

asserted that Dr. Gessner committed constitutional violations under 42 U.S.C. § 1983 by failing to provide him with adequate medical care when she refused to prescribe him a walker while he was incarcerated at the Bucks County Correctional Facility ("BCCF") in late 2018 to mid-2019. Compl. at 3–5, Doc. No. 1. On December 23, 2020, Dr. Gessner filed her answer to the complaint. Doc. No. 4.

After discovery concluded, Dr. Gessner filed a motion for summary judgment and a statement of undisputed material facts on July 1, 2021. Doc. Nos. 14, 15. Jones requested, and the court granted, an extension of time to respond to Dr. Gessner's motion for summary judgment. Doc. Nos. 16, 17. On July 23, 2021, Jones filed a brief in opposition to the motion, a response to Dr. Gessner's statement of undisputed facts, and a statement of additional facts that he asserts precludes the court from entering summary judgment for Dr. Gessner. Doc. Nos. 18, 19. Dr. Gessner filed a reply brief and a response to Jones's statement of additional facts on July 30, 2021. Doc. Nos. 21, 22. The court heard oral argument on the motion for summary judgment on September 29, 2021. Doc. No. 26. The motion for summary judgment is now ripe for disposition.

## II.   DISCUSSION

### A.   Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy the non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would

3

show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

    **B.**    **<u>Factual Background Applicable to the Motion for Summary Judgment</u>**

On September 4, 2018, Jones was involved in a motor vehicle accident, which resulted in him suffering a posterior right hip dislocation/acetabulum fracture. Def.'s Statement of Undisputed Facts in Supp. of Her Mot. for Summ. J. ("Def.'s Facts") at ¶¶ 2, 3, Doc. No. 15; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Pl.'s Resp.") at ¶¶ 2, 3, Doc. No. 19. Immediately after the accident, Jones underwent an open reduction surgical procedure to repair his hip at the Aria Torresdale Hospital in Philadelphia, Pennsylvania. Def.'s Facts at ¶¶ 4, 5; Pl's Resp. at ¶¶ 4, 5. At

the time of his discharge from the hospital, Jones was prescribed a walker to assist him. Pl.'s Add'l Facts Which Pl. Contends Preclude Summ. J. ("Pl.'s Facts") at ¶ 1, Doc. No. 19;[1] Victoria Gessner M.D.'s Resp. to Pl.'s Add'l Facts Which Pl. Contends Precludes Summ. J. ("Def.'s Resp.") at ¶ 1, Doc. No. 21. Jones received follow-up care from Dr. Mark Desmond of Rothman Orthopaedics. Def.'s Facts at ¶ 6; Pl.'s Resp. at ¶ 6.

After Jones's discharge from the hospital on September 10, 2018, he was taken to the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. Def.'s Facts at ¶ 5 and Ex. C, Pl.'s Med. Record from CFCF; Pl's Resp. at ¶ 5. While at CFCF, Jones received physical therapy. Pl.'s Facts at ¶ 2; Def.'s Resp. at ¶ 2.

During his incarceration at CFCF, Jones had an appointment with Dr. Desmond on September 26, 2018. Def.'s Facts at ¶ 9; Pl.'s Resp. at ¶ 9. Dr. Desmond recommended Jones continue with protected weightbearing (i.e. using an assistive device such as a walker) for a full month from the date of injury (i.e. until October 4, 2018).[2] *See* Def.'s Facts at ¶¶ 10, 15; *id.*, Ex. D, Pl.'s Med. Records from Rothman Institute at ECF pp. 6–7, Doc. No. 15-5; Pl.'s Resp. at ¶¶ 10, 15. However, at the time of this appointment, Jones was already ambulating with full weight-bearing and he neither limped nor complained of pain. Def.'s Facts at ¶ 11; Pl.'s Resp. at ¶ 11. X-rays taken at that appointment showed an anatomically aligned hip joint. Def.'s Facts at ¶ 12; Pl.'s Resp. at ¶ 12. During a physical examination, Dr. Desmond noted that Jones had supple hip and

---

[1] Jones's statement of additional facts starts at ECF p. 5 of Doc. No. 19.
[2] Jones had informed Dr. Desmond that he had been using a walker while at CFCF. Def.'s Facts at ¶ 14; Pl.'s Resp. at ¶ 14.

knee motion without pain, and there was no deformity, no defect, and no instability. Def.'s Facts at ¶ 13; Pl.'s Resp. at ¶ 13.

Dr. Desmond recommended that Jones follow-up with him in one month.[3] Def.'s Facts at ¶ 17; Pl.'s Resp. at ¶ 17. Dr. Desmond also renewed Jones's prescription for physical therapy. Pl.'s Facts at ¶ 3; Def.'s Resp. at ¶ 3.

Jones was transferred to BCCF on October 30, 2018. Def.'s Facts at ¶ 7; Pl.'s Resp. at ¶ 7. At this time, Jones did not have any medical appointments scheduled.[4] Def.'s Facts, Ex. C at ECF p. 2, Doc No. 15-4. Jones was still using the walker to ambulate. Pl.'s Facts at ¶ 4; Def.'s Resp. at ¶ 4.

During his medical intake at BCCF on October 30, 2018, Jones disclosed he had broken his hip in a motor vehicle accident and that he was still ambulating with a walker.[5] Def.'s Facts at ¶¶ 25, 26; Pl.'s Resp. at ¶¶ 25, 26; Pl.'s Facts at ¶ 6; Def.'s Resp. at ¶ 6. Jones also executed a medical release so BCCF could get his medical records. Def.'s Facts at ¶ 28; Pl.'s Resp. at ¶ 28.

Molly Longacre, PA, evaluated Jones on November 1, 2018.[6] Def.'s Facts at ¶ 30; Pl.'s Resp. at ¶ 30. Although PA Longacre questioned Jones's continued use of the walker, she did not discontinue it, and she scheduled a follow-up evaluation for November 30, 2018. Def.'s Facts at ¶ 32; Pl.'s Resp. at ¶ 32; Pl.'s Facts at ¶ 9; Def.'s Resp. at ¶ 9. During the November 30, 2018

---

[3] It does not appear that anyone at CFCF scheduled a follow-up appointment for Jones. Def.'s Facts at ¶ 18; Pl.'s Resp. at ¶ 18.
[4] Jones's intake paperwork at BCCF indicates that he did not have any medical consults pending at the time. *See* Def.'s Facts, Ex. C at ECF p. 2, Doc. No. 15-4. Jones disagrees with the premise that he did not have any medical consultations that were pending as Dr. Desmond had recommended that Jones follow-up with him in a month, and during this appointment, he planned to have Jones x-rayed. *See* Pl.'s Resp. at ¶ 8. Regardless of the parties' dispute on this issue, Jones did not have an appointment scheduled with Dr. Desmond at the time he entered BCCF.
[5] Jones indicated that he had gone to Aria Torresdale for his surgery. Def.'s Facts at ¶ 27; Pl.'s Resp. at ¶ 27. This appears to be incorrect.
[6] At the time of this evaluation, BCCF had not received Jones's medical records from the Rothman Institute concerning his orthopedic treatment before his incarceration in BCCF. Def.'s Facts at ¶ 31; Pl.'s Resp. at ¶ 31; Pl.'s Facts at ¶ 8; Def.'s Resp. at ¶ 8.

evaluation, PA Longacre requested that Dr. Gessner, who had been the medical director at BCCF since 2010, evaluate Jones to determine whether he still needed a walker.[7] Def.'s Facts at ¶¶ 21, 34; Pl.'s Resp. at ¶¶ 21, 34.

Dr. Gessner evaluated Jones on December 5, 2018.[8] Def.'s Facts at ¶ 35; Pl.'s Resp. at ¶ 35. Prior to her evaluation on December 5, 2018, Dr. Gessner reviewed the records from Jones's appointment with Dr. Desmond on September 26, 2018. Def.'s Facts at ¶ 36; Pl.'s Resp. at ¶ 36.[9] She was also aware that during the intake exam, Jones indicated that he had been prescribed the walker and that he was unable to walk. Pl.'s Facts at ¶ 21; Def.'s Resp. at ¶ 21. Dr. Gessner also knew that Jones had been using a walker when admitted to BCCF. Pl.'s Facts at ¶ 23; Def.'s Resp. at ¶ 23.

During the evaluation, Dr. Gessner did not conduct a physical examination of Jones. Pl.'s Facts at ¶¶ 11, 20; Def.'s Resp. at ¶¶ 11, 20. Dr. Gessner evaluated Jones as being in no acute distress and observed that he had a normal gait.[10] Def.'s Facts at ¶ 41; Pl.'s Resp. at ¶ 41. To the extent Dr. Gessner watched Jones walk, it was for no more than a few feet. Pl.'s Facts at ¶ 15;

---

[7] Dr. Gessner obtained her medical degree from Temple University in 1983. Def.'s Facts at ¶ 19; Pl.'s Resp. at ¶ 19. Following graduation from medical school, Dr. Gessner had a general surgery internship at the Medical College of Pennsylvania from June 1983 through September 1983, as well as an internship in internal medicine at Mercy Catholic Hospital from June 1984 through July 1985. Def.'s Facts at ¶ 20; Pl.'s Resp. at ¶ 20.
   In addition to her employment as medical director at BCCF, Dr. Gessner has also been the medical director at the Northampton County Jail, the Berks County Jail, the Chester County Prison, the Pike County Correctional Facility, and the Monroe County Correctional Facility. Def.'s Facts at ¶ 22; Pl.'s Resp. at ¶ 22. Dr. Gessner has been an employee of PrimeCare Medical, Inc. since November 2007. Def.'s Facts at ¶ 23; Pl.'s Resp. at ¶ 23. Dr. Gessner is currently licensed in Pennsylvania, Maryland, and New York. Def.'s Facts at ¶ 24; Pl.'s Resp. at ¶ 24.
[8] Seemingly just prior to this evaluation, Assistant Director of Nursing, Samantha Grous, also requested that Dr. Gessner perform a review to determine whether Jones needed a walker. Def.'s Facts at ¶ 39; Pl.'s Resp. at ¶ 39. Apparently, Ms. Grous had watched Jones walk, and she noted that he had a perfect gait. Def.'s Facts at ¶ 40; Pl.'s Resp. at ¶ 40.
[9] The court notes that Jones technically denied this factual assertion from Dr. Gessner. *See* Pl.'s Resp. at ¶ 36. Nonetheless, his denial does not identify any fact in the record that would dispute Dr. Gessner's assertion that she reviewed Jones's medical records prior to the evaluation. Since the record supports Dr. Gessner's assertion and Jones had not identified any evidence in the record to contradict it, the court determines that it is undisputed that Dr. Gessner reviewed the records from Jones's September 26, 2018 appointment prior to evaluating him.
[10] Dr. Gessner's notes reflect that at certain times during the evaluation, Jones told her that he could not walk, while at others he informed her that he could. Def.'s Facts, Ex. A at ECF p. 12.

Def.'s Resp. at ¶ 15. Using her medical judgment, Dr. Gessner discontinued use of the walker and placed Jones on "Acute Watch Medical," meaning that he had a medical necessity for close observation.[11] Def.'s Facts at ¶¶ 42, 43, 45; Pl.'s Resp. at ¶¶ 42, 43, 45; Pl.'s Facts at ¶ 18; Def.'s Resp. at ¶ 18. Jones asserts that when he learned of this decision, he told Dr. Gessner he was in "a whole bunch of pain" and that he could not understand her decision because he was in "excruciating pain."[12] Pl.'s Facts at ¶¶ 12, 14. Jones also asserts that he requested a crutch or cane to replace the walker. Pl.'s Facts at ¶ 13. Dr. Gessner did not order a cane for Jones. Def.'s Resp. at ¶ 13.

Dr. Gessner evaluated Jones again two days later on December 7, 2018, during which time she noted Jones ambulated without difficulty, had a normal gait, and sat/stood without difficulty.[13] Def.'s Facts at ¶¶ 47, 48; Pl.'s Resp. at ¶¶ 47, 48. Dr. Gessner attempted to explain to Jones why he did not need a walker. Def.'s Facts at ¶ 49; Pl.'s Resp. at ¶ 49. She later testified she felt Jones could be harmed if he continued using the walker because he could "develop a gait abnormality and lose proprioception and balance ability." Def.'s Facts at ¶¶ 50, 51; Pl.'s Resp. at ¶¶ 50, 51. She also testified that she made clear there were many walkers available at BCCF had Jones needed one. Def.'s Facts at ¶ 52; Pl.'s Resp. at ¶ 52; Pl.'s Facts at ¶ 27; Def.'s Resp. at ¶ 27.

After this evaluation, Dr. Gessner instructed the staff to schedule a follow-up with Dr. Desmond. Def.'s Facts at ¶ 53; Pl.'s Resp. at ¶ 53. In the interim, Dr. Gessner evaluated Jones one final time on December 12, 2018. Def.'s Facts at ¶ 54; Pl.'s Resp. at ¶ 54. At this evaluation, she noted Jones was ambulating without an impaired gait. Def.'s Facts at ¶ 56; Pl.'s Resp. at ¶ 56. Dr.

---

[11] Dr. Gessner testified that her medical judgment was based upon her training, education, experience, and the recommendations of the orthopedic surgeon. Def.'s Facts at ¶ 46; Pl.'s Resp. at ¶ 46.
[12] Dr. Gessner denies Jones's assertion that he was in excruciating pain. Def.'s Resp. at ¶ 14.
[13] Jones asserts that he complained about pain in his hip to Dr. Gessner. Pl.'s Facts at ¶ 16. Dr. Gessner denies this assertion, pointing out that (1) Jones was prescribed pain medication two times a day as needed and (2) he had refused to take pain medication in the morning before his visit. Def.'s Resp. at ¶¶ 16, 17.

Gessner's notes from the visit reflect that Jones variously said he had no need for a walker, while also threatening to fall without a walker. Def.'s Facts, Ex. A, at ECF p. 11, Doc. No. 15-2. Dr. Gessner removed him from Acute Watch Medical after this visit. Def.'s Facts at ¶ 58; Pl.'s Resp. at ¶ 58.

On December 20, 2018, Dr. Desmond conducted his final examination of Jones. Def.'s Facts at ¶ 59; Pl.'s Resp. at ¶ 59. The physical examination revealed that Jones walked into the room, lacked some internal and external rotation, but flexion and extension were good. Def.'s Facts at ¶ 60; Pl.'s Resp. at ¶ 60. Jones had no deformity, defects, or masses around the hip. Def.'s Facts at ¶ 61; Pl.'s Resp. at ¶ 61. Dr. Desmond's office performed an x-ray, which revealed that Jones had heterotopic ossification. Def.'s Facts at ¶ 62; Pl.'s Resp. at ¶ 62. Dr. Desmond noted that as this condition matured, Jones may notice less discomfort. Def.'s Facts at ¶ 63; Pl.'s Resp. at ¶ 63. Jones did not appear to be affected by this condition at the time of Dr. Desmond's examination. Def.'s Facts at ¶ 64; Pl.'s Resp. at ¶ 64. Dr. Desmond did not recommend any restrictions, other than instructing Jones to avoid high-impact activity for three more months.[14] Def.'s Facts at ¶ 66; Pl.'s Resp. at ¶ 66. Thus, after an examination, Dr. Desmond, Jones's treating orthopedic surgeon, did not believe he required any sort of assistive devices or that he should have any medical restrictions other than avoiding high impact activity for several months. Def.'s Facts at ¶ 67; Pl.'s Resp. at ¶ 67.

Jones alleges he had a sick call appointment in February 2019 and made a sick-call request in April 2019, complaining, during both instances, he was experiencing leg pain because he did not have a walker. Compl. at 3; Pl.'s Facts at ¶ 26; Def.'s Resp. at ¶ 26. In July 2019, Jones was released from BCCF. Compl. at 4. Although Jones had alleged in the complaint that he had learned

---

[14] Dr. Desmond's note indicated that if Jones had motion issues in the future, he could return for an evaluation electively. Def.'s Facts at ¶ 65; Pl.'s Resp. at ¶ 65.

he will need further surgery because Dr. Gessner discontinued the walker, Jones's counsel conceded during oral argument this was inaccurate. Thus, Dr. Gessner's discontinuation of the walker did not cause damage to Jones that requires surgery to repair.

### C.  Analysis

The undisputed material facts confirm Jones has not established a constitutional violation. To succeed on an Eighth Amendment claim, a plaintiff must make "(1) a subjective showing that "the defendants were deliberately indifferent to [his or her] medical needs" and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need

> must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.

*Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

Deliberate indifference is manifest where the defendant has knowledge of the need for medical care, but intentionally refuses to provide it, or where the "denial exposes the inmate to undue suffering or the threat of tangible residual injury." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting cases). If the inmate is provided treatment, his "mere disagreement [with that treatment] . . . is not an actionable constitutional violation." *Boomer v. Lewis*, 541 F. App'x 186, 191 (3d Cir. 2013) (per curiam) (citing *Lanzaro*, 834 F.2d at 346). Prison medical authorities receive considerable deference in their treatment choices, making it difficult to establish a deliberate indifference claim. *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017). Further, a prison doctor's professional judgment "will be presumed valid 'unless it is such a substantial departure from professional judgment, practice or standards as

to demonstrate that the doctor did not base the decision on such a judgment.'" *Soto-Muniz v. Martin*, 665 F. App'x 226, 228 (3d Cir. 2016) (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)).

Although both parties agree Jones's medical condition was serious, Dr. Gessner did not act with deliberate indifference when she discontinued his use of a walker. When Dr. Gessner examined Jones on December 5, 2018, she determined that because he was ambulating without an assistive device and without an impaired gait, he no longer needed a walker. At this time, Jones expressed he was in "excruciating pain," meaning that even with the walker, he was experiencing pain. Dr. Gessner's discontinuation of the walker did not cause Jones's pain; it existed (if at all) regardless of whether he used a walker. Thus, Jones has not established Dr. Gessner acted with deliberate indifference. Instead, he has shown only that he disagrees with her treatment choice, which is insufficient to establish a deliberate indifference claim. *See Warren v. Boggio*, No. 11-CV-6050, 2012 WL 3114691, at *4 (E.D. Pa. July 31, 2012) ("While deliberate indifference may be demonstrated by an intentional denial or delay of medical care, where a prisoner has received some medical care and alleges mistreatment because of a dispute over the adequacy of that care, the courts should be 'reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Further, Jones has not established Dr. Gessner's treatment choice constituted a substantial departure from professional judgment. Prior to her December 5, 2018 examination, Dr. Gessner consulted Dr. Desmond's notes, in which Dr. Desmond only recommended Jones use a walker for one month after the injury. This period ended on October 4, 2018, which was well before Jones

was transferred to BCCF. When Dr. Desmond re-examined Jones on December 20, 2018, he, like Dr. Gessner before him, concluded Jones did not require a walker.

Although both parties agree Jones suffered from a serious medical need, he has not made a subjective showing that Dr. Gessner acted with deliberate indifference in treating that need. As such, Jones has not established a constitutional violation and Dr. Gessner is entitled to summary judgment in her favor.

### III. CONCLUSION

Jones claims Dr. Gessner's failure to provide a walker following his complaints of hip pain violated the Constitution. After reviewing the record in the light most favorable to Jones as the non-moving party, the court finds there are no genuine issues of material fact and Dr. Gessner's conduct did not amount to deliberate indifference. Therefore, the court will grant Dr. Gessner's motion for summary judgment.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.